UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

BRODERICK HODGE,

    Plaintiff,

v.

COREY GRAHN et al.,

    Defendants.
_____/

Case No. 1:18-cv-359

Honorable Janet T. Neff

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The action initially was filed in the Eastern District of Michigan. That court dismissed two parties located in the Eastern District and transferred the remainder of the case to this Court based on venue considerations. (*See* Op. & Order, ECF No. 3, PageID.41-48.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Randel. The Court will serve the complaint against Defendants Aiken, Grahn, Nicholason, and Corizon, Inc.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility and the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan. Plaintiff sues RMI Nurse Practitioner Corey Grahn; RMI Nurses Surbine Aiken and (unknown) Randel; MTU Sergeant (unknown) Nicholason[1]; and several unknown health care staff employed at RMI and MTU (Unknown Parties #1).

Plaintiff alleges that he suffers from a seizure disorder and that he has or previously had a medical accommodation detail requiring that he be housed in a first-floor cell with a bottom-bunk assignment. According to Plaintiff, in 2016, he was being housed on an upper floor. After complaining to unnamed officials proved fruitless, Plaintiff wrote a grievance on October 18, 2016, asking that his medical details be honored, because his seizure disorder placed his life at risk. Defendant Aiken responded to the grievance and "intentionally falsified the medical facts regarding the Plaintiff, facts that would show that Plaintiff did in fact have a medical special accommodation detail for ground floor housing and bottom bunk." (Compl., ECF No. 1, PageID.4.) Plaintiff alleges that Defendant Aiken either knew or should have known that Plaintiff had these medical accommodations. Plaintiff further alleges that Defendant Aiken was grossly negligent in failing to review Plaintiff's entire medical record and either grossly negligent or

---

[1] At various points in his complaint, Plaintiff uses the name "Nicholas," "Nicholason," and "Nicholson." The Court has used the name "Nicholason," as written in the list of Defendants. (Compl., ECF No. 1, PageID.3.)

2

deliberately indifferent to the potential suffering caused by her misrepresentation about Plaintiff's medical accommodation detail.

On December 7, 2016, while visiting with a psychologist, Plaintiff experienced a seizure. He lost consciousness and struck his face and head on an unknown object. He suffered bruises on his head and the side of his face, and he experienced severe pain and confusion upon waking. Plaintiff was seen by Defendant Grahn. Plaintiff told Defendant Grahn about his medical history of seizures both before and after incarceration. He also told Grahn that his medical accommodations had been denied. In addition, Plaintiff explained to Grahn all of the symptoms he was suffering, both from the injury and from his seizures. Those symptoms included confusion, pain, and problems with his vision, focusing ability and concentration. Plaintiff further explained his fear of falling down the stairs during a seizure. He asked Defendant Grahn to place him back on his anti-seizure medication. Grahn refused, saying, "No, no, no, you must have a few more seizures so we can verify and monitor how many and how often you are having the seizures; maybe after a few more seizures." (*Id.*, PageID.6.) Plaintiff complains that Defendant Grahn ignored the risks Plaintiff faced from further seizures, failed to review Plaintiff's medical file, failed to examine Plaintiff's injuries, and provided no medical treatment or advice.

Plaintiff subsequently sent a series of kites to health services, complaining of blurred vision, lack of focus, lack of balance, nausea, and severe headaches. Plaintiff alleges that the symptoms were conveyed to Defendant Grahn and placed on his health care request. He was not seen again by health care.

On December 20, 2016, as Plaintiff was walking to school, he began to feel dizzy and faint at the top of the unit stairs. He had a seizure and fell down the stairs. In the fall, Plaintiff seriously injured his back. When he was taken to health services, he was given only ice and aspirin.

3

He was provided no accommodations, and no effort was made to determine what dose of anti-seizure medication was needed.

On December 21, 2016, Plaintiff informed Defendant Nicholason that he was in severe pain, could hardly see, and had blinding white light in his vision. Nicholason called health care, and Unknown Parties #1 refused to see Plaintiff because they were busy.

Until the time of his complaints about health care, Plaintiff received his meals in his room as part of his accommodation. Defendant Grahn told Plaintiff that he was a "headache" and discontinued the meals, forcing Plaintiff to walk to the chow hall in his debilitated state. Grahn then used his position to have Plaintiff transferred to MTU.

On June 4, 2017, as Plaintiff was walking to the phone, he felt a sharp pain in his back and then his legs collapsed under him. Two nurses came, but Defendant Nicholason laughingly told the nurses that Plaintiff was faking his problem. Nicholason jerked on Plaintiff's arm until he could pull him up, and he threw Plaintiff into a wheelchair.

Nicholason's actions caused further injury to Plaintiff's back, necessitating surgery to place a "Caliber L-Fusion" cage in Plaintiff's back on November 12, 2017. Plaintiff now walks with a walker and cannot stand to shower.

Plaintiff's remaining allegations appear related to his post-surgery care at Duane Waters Hospital and the Defendants dismissed by the Eastern District of Michigan. Plaintiff may, however, intend to allege ongoing failures to provide pain medication and retaliation for filing grievances after he returned to MTU. Plaintiff alleges that all Defendants conspired to deny him medical treatment and to retaliate against him for filing complaints and grievances.

Plaintiff seeks compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails to even to mention Defendant Randel in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the

claim showing that the pleader is entitled to relief"). The Court therefore will dismiss Defendant Randel from the action.

Upon initial review, the Court concludes that Plaintiff's allegations are sufficient to state a claim against the remaining Defendants.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Randel will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Grahn, Aiken, Nicholason, and Corizon, Inc.[2]

An Order consistent with this Opinion will be entered.

Dated: April 11, 2018          /s/ Janet T. Neff
                               Janet T. Neff
                               United States District Judge

---

[2] The Court lacks sufficient information at this juncture to order service on Defendant Unknown Parties #1.