UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRODERICK HODGE #325426,

    Plaintiff,                                      Hon. Janet T. Neff

v.                                                        Case No. 1:18-cv-359

COREY GRAHN, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants Surbine Aiken and Unknown Nicholason' Motion for Summary Judgment</u>. (ECF No. 23). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part**.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. (ECF No. 1). On or about October 18, 2016, Plaintiff submitted a prison grievance in which he requested "ground floor housing and a bottom bunk detail" due to the fact that he was experiencing seizures. Nurse Subrine Aiken denied Plaintiff's grievance.

On or about December 7, 2016, Plaintiff suffered a seizure while meeting with a care provider. As a result of this seizure, Plaintiff lost consciousness and struck his head on an unknown object causing "bruises and discoloration." Plaintiff subsequently met with Nurse Practitioner Cory Grahn who neither conducted a physical examination nor provided any medical

-1-

treatment. Plaintiff asked Grahn "to place him back on his anti-seizure medication," but Grahn denied Plaintiff's request, informing Plaintiff that he first needed to experience "a few more seizures so we can verify and monitor how many and how often you are having the seizures." Following this encounter, Plaintiff began submitting health care requests in which he described "the effects the seizures were having on him," but Plaintiff's requests for treatment were all ignored.

On or about December 20, 2016, Plaintiff experienced a seizure and fell down a flight of stairs, injuring his back, neck, and head. Plaintiff was transported to "healthcare" where he was provided "some ice and a few aspirins." On or about December 21, 2016, Plaintiff reported to Officer Nicholson that he was experiencing a "medical emergency." Specifically, Plaintiff reported that "his head was hurting so bad that he could hardly see clearly and that there was a blinding white light in his eyes." Nicholson contacted Health Services on Plaintiff's behalf, but was informed by an unidentified nurse that Plaintiff could not be examined until "sometime" the next day.

On or about June 4, 2017, Plaintiff "felt a sharp pain in his back and then his legs gave out on him." As two nurses approached Plaintiff, Officer Nicholson stated, "I know this guy is faking it. There is nothing wrong with him." Nicholson and a nurse then "jerked and pulled" Plaintiff up from the floor and placed him in a wheelchair worsening his condition in the process. On November 12, 2017, Plaintiff underwent spinal fusion surgery. On or about December 18, 2017, Plaintiff "was taken off his back pain medication" in retaliation for writing grievances and complaints.

On unspecified dates, Grahn informed Plaintiff "that he was a headache and [Grahn] would find a way to get rid [him]." Grahn, on an unspecified date, prevented Plaintiff from being able to eat his meals in his cell, thereby "forcing Plaintiff to walk to the chow hall in his debilitated state." Finally, on an unspecified date, Grahn had Plaintiff transferred to a different correctional facility.

Plaintiff initiated this action in the Eastern District of Michigan against numerous individuals alleging violation of his First and Eighth Amendment rights, as well as various state law claims. Plaintiff also alleges that Defendants conspired to violate his constitutional rights. The Eastern District of Michigan dismissed many of Plaintiff's claims and transferred the matter to this Court. (ECF No. 4). This Court likewise dismissed more of Plaintiff's claims and ordered that Plaintiff's complaint be served on Defendants Grahn, Aiken, Nicholson, and Corizon. (ECF No. 7). Defendants Aiken and Nicholson now move for summary judgment. Defendant Aiken also moves, in the alternative, for relief on the ground that Plaintiff's allegations against her fail to state a claim on which relief may be granted.

## LEGAL STANDARD

**I.        Motion to Dismiss Standard**

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2000). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative

-3-

level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

**II.     Summary Judgment Standard**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating

"that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Failure to State a Claim**

Defendant Aiken argues that she is entitled to relief on the ground that Plaintiff's allegations against her fail to state a claim on which relief may be granted. The Court agrees.

On October 20, 2016, Plaintiff submitted a grievance alleging that he was improperly being denied a ground floor cell assignment. (ECF No. 24-2 at PageID.319). This grievance was denied at Step I, at which point Plaintiff appealed the matter to Step II. (ECF No. 24-2 at PageID.317-20). Plaintiff's Step II grievance was denied by Defendant Aiken. (ECF

No. 24-2 at PageID.317-18).  The only allegations in Plaintiff's complaint against Defendant Aiken concern her decision to deny Plaintiff's Step II grievance.

Liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, rather liability must be based upon active unconstitutional behavior.  *See Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999).  Accordingly, liability in a § 1983 action does not attach based upon allegations that a defendant simply denied a prisoner's grievance or failed to act in response thereto.  *See Skinner v. Govorchin*, 463 F.3d 518, 525-26 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lee v. Michigan Parole Board*, 2004 WL 1532563 at *2 (6th Cir., June 23, 2004) ("[s]ection 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act upon information contained in a grievance"); *Alder v. Correctional Medical Services*, 2003 WL 22025373 at *2 (6th Cir., Aug. 27, 2003) ("[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension").  Accordingly, the undersigned recommends that Plaintiff's claims against Defendant Aiken be dismissed for failure to state a claim upon which relief may be granted.

**II.**     **Exhaustion**

Defendants Aiken and Nicholson argue that they are entitled to relief on the ground that Plaintiff has failed to properly exhaust his claims against them.  Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Id*. The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V. The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their motion, Defendants Aiken and Nicholson have provided copies of several grievances that Plaintiff pursued through all three steps of the grievance process. (ECF No. 24-2 at PageID.283-320). While Defendants are correct that none of the grievances they identified serve to properly exhaust any of Plaintiff's claims against them, Plaintiff has submitted a copy of an additional grievance which indicates that Plaintiff has, in fact, properly exhausted one of his claims against Defendant Nicholson.

On June 9, 2017, Plaintiff submitted a grievance in which he alleged the following. On June 4, 2017, Plaintiff's "back and legs gave out" causing him to fall to the floor. (ECF No. 32-1 at PageID.478-79). Defendant Nicholson approached Plaintiff and laughingly stated that Plaintiff was "faking it." (ECF No. 32-1 at PageID.478-79). Nicholson and another staff member then "began trying to lift [Plaintiff] off the floor" by "pulling and jerking [Plaintiff] by [his] arms causing [his] back to twist" causing "excruciating" pain. (ECF No. 32-1 at PageID.479). Plaintiff began "yelling for them to stop" to no avail. (ECF No. 32-1 at PageID.479). Plaintiff alleged that Nicholson's actions worsened his already present spinal injury and constituted deliberate indifference to his medical needs. (ECF No. 32-1 at

PageID.479).  Plaintiff pursued this grievance through all three steps of the grievance process. (ECF No. 32-1 at PageID.478-83).  This grievance properly exhausts Plaintiff's claim that on June 4, 2017, Defendant Nicholson violated his Eighth Amendment right to be free from cruel and unusual punishment.

Accordingly, the undersigned recommends that, in the alternative, Plaintiff's claims against Defendant Aiken be dismissed for failure to exhaust administrative remedies.  The undersigned further recommends that Plaintiff's claims against Defendant Nicholson be dismissed for failure to exhaust administrative remedies except for Plaintiff's claim that Nicholson's actions on June 4, 2017, constituted deliberate indifference to his serious medical needs.

### III.     State Claims

In addition to his various federal law claims, Plaintiff also asserts state law claims for "negligence" and "malpractice."  Federal law provides that the Court "may decline to exercise supplemental jurisdiction" over related state law claims if such claims "substantially predominate[] over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2).

The Court has "broad discretion to exercise its supplemental jurisdiction."  *See Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010).  Moreover, the exercise by a federal district court of supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right."  *Burch v. Medilodge of Port Huron, LLC*, 2013 WL 1499344 at *1 (E.D Mich., Apr. 11, 2013) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  When considering whether to retain jurisdiction over supplemental state-law claims, the Court must consider factors such as judicial economy, convenience, fairness, and comity.  *Gamel*, 625 F.3d at 951.

Considering the relevant factors and circumstances, the Court recommends that Plaintiff's state law claims be dismissed so that such can be pursued in a more appropriate forum.

With one exception, Plaintiff's federal claims against Defendants Aiken and Nicholson have all been dismissed. Thus, Plaintiff's state law claim predominate over the single federal claim, a circumstance which weighs in favor of dismissal. *See, e.g., Rugumbwa v. Betten Motor Sales*, 200 F.R.D. 358, 368 (W.D. Mich. 2001) ("the court declines to exercise its supplemental jurisdiction because plaintiff's six state law claims. . .substantially predominate over their single federal claim"); *Dietrich v. Simon*, 2017 WL 5201919 at *2 (6th Cir., May 17, 2017) (where the plaintiff's complaint "alleged only a single federal claim and five state law claims, the state law claims predominated, and the district court did not abuse its discretion in declining to exercise supplemental jurisdiction"). Accordingly, the undersigned recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendants Aiken and Nicholson and instead dismiss these claims without prejudice so that Plaintiff may pursue them in a more appropriate state forum.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants Surbine Aiken and Unknown Nicholason' Motion for Summary Judgment</u>, (ECF No. 23), be **granted in part and denied in part**. Specifically, the undersigned recommends that Plaintiff's claims against Defendant Aiken be dismissed for failure to state a claim or, in the alternative, for failure to exhaust administrative remedies. The undersigned further recommends that Plaintiff's claims against Defendant Nicholson be dismissed for failure to exhaust administrative remedies except for Plaintiff's claim that Nicholson's actions on June 4, 2017, constituted deliberate

indifference to his serious medical needs. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated: January 7, 2019

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge