UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRODERICK HODGE #325426,

    Plaintiff,

v.

COREY GRAHN, et al.,

    Defendants.

_____/

Hon. Janet T. Neff

Case No. 1:18-cv-359

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants Corizon, Inc. and Corey Grahn' Motion for Summary Judgment</u>. (ECF No. 16). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted**.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. (ECF No. 1). On or about October 18, 2016, Plaintiff submitted a prison grievance in which he requested "ground floor housing and a bottom bunk detail" due to the fact that he was experiencing seizures. Nurse Subrine Aiken denied Plaintiff's grievance.

On or about December 7, 2016, Plaintiff suffered a seizure while meeting with a care provider. As a result of this seizure, Plaintiff lost consciousness and struck his head on an unknown object causing "bruises and discoloration." Plaintiff subsequently met with Nurse Practitioner Cory Grahn who neither conducted a physical examination nor provided any medical treatment. Plaintiff

-1-

asked Grahn "to place him back on his anti-seizure medication," but Grahn denied Plaintiff's request, informing Plaintiff that he first needed to experience "a few more seizures so we can verify and monitor how many and how often you are having the seizures." Following this encounter, Plaintiff began submitting health care requests in which he described "the effects the seizures were having on him," but Plaintiff's requests for treatment were all ignored.

On or about December 20, 2016, Plaintiff experienced a seizure and fell down a flight of stairs, injuring his back, neck, and head. Plaintiff was transported to "healthcare" where he was provided "some ice and a few aspirins." On or about December 21, 2016, Plaintiff reported to Officer Nicholson that he was experiencing a "medical emergency." Specifically, Plaintiff reported that "his head was hurting so bad that he could hardly see clearly and that there was a blinding white light in his eyes." Nicholson contacted Health Services on Plaintiff's behalf, but was informed by an unidentified nurse that Plaintiff could not be examined until "sometime" the next day.

On or about June 4, 2017, Plaintiff "felt a sharp pain in his back and then his legs gave out on him." As two nurses approached Plaintiff, Officer Nicholson stated, "I know this guy is faking it. There is nothing wrong with him." Nicholson and a nurse then "jerked and pulled" Plaintiff up from the floor and placed him in a wheelchair worsening his condition in the process. On November 12, 2017, Plaintiff underwent spinal fusion surgery. On or about December 18, 2017, Plaintiff "was taken off his back pain medication" in retaliation for writing grievances and complaints.

On unspecified dates, Nurse Grahn informed Plaintiff "that he was a headache and [Grahn] would find a way to get rid [him]." Grahn, on an unspecified date, prevented Plaintiff from being able to eat his meals in his cell, thereby "forcing Plaintiff to walk to the chow hall in his

debilitated state." Finally, on an unspecified date, Grahn had Plaintiff transferred to a different correctional facility.

In an addendum submitted with his Complaint, Plaintiff further alleges that following his November 2017 back surgery, an unidentified "prison official" refused to provide him with an air mattress. Plaintiff alleges that this action violated: (1) his right to the equal protection of the law; (2) his right to be free from cruel and unusual punishment; and (3) his rights under the Americans with Disabilities Act. The allegations in this addendum, however, are not asserted against Defendants Grahn or Corizon.

Plaintiff initiated this action in the Eastern District of Michigan against numerous individuals alleging violation of his First and Eighth Amendment rights, as well as various state law claims. Plaintiff also alleges that Defendants conspired to violate his constitutional rights. The Eastern District of Michigan dismissed many of Plaintiff's claims and transferred the matter to this Court. (ECF No. 4). This Court likewise dismissed more of Plaintiff's claims and ordered that Plaintiff's complaint be served on Defendants Grahn, Aiken, Nicholson, and Corizon. (ECF No. 7). Defendants Grahn and Corizon now move for summary judgment.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's

case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has

the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.      Retaliation**

The Court interprets Plaintiff's complaint as asserting against Defendant Grahn two claims that he was subjected to unlawful retaliation. First, Plaintiff alleges that Grahn told him he "was a headache" and that Grahn would "find a way to get rid of" Plaintiff. (ECF No. 1 at PageID.11). Plaintiff alleges that "Grahn's threats were directly related to Plaintiff's exercise of his First Amendment rights to petition the government for the redress of grievances." (ECF No. 1 at PageID.11). Secondly, Plaintiff alleges that Grahn "used his position as a [nurse] to have [him] transferred." While Plaintiff fails to expressly state that Grahn transferred him for retaliatory reasons, the Court has interpreted this allegation as asserting such a claim of unlawful retaliation.

The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the

adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

        A.        Retaliatory Threats

With respect to Plaintiff's claim that Grahn "threatened" him, even if the Court assumes that Plaintiff can satisfy the first two elements of the analysis, Plaintiff's claim fails because he cannot establish the requisite causal connection. As courts have long recognized, retaliation is easy to allege and "is often very difficult to prove with direct evidence." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted). Conclusory allegations of retaliatory motive are insufficient, however. *See Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir., Mar. 12, 2004). Instead, Plaintiff must, at a minimum, allege a chronology of events from which retaliation can plausibly be inferred. *See Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004).

Plaintiff has neither alleged nor presented evidence regarding the date(s) on which any of the relevant events occurred. By failing to allege or establish the date(s) on which his allegedly protected conduct occurred and the date(s) on which the allegedly retaliatory conduct occurred, Plaintiff has failed to allege or demonstrate a chronology of events from which retaliation can plausibly be inferred. Accordingly, the undersigned recommends that Defendant Grahn's motion for summary judgment be granted as to this claim.

B.   Retaliatory Transfer

Plaintiff alleges that Defendant Grahn "used his position as a [nurse] to have [him] transferred." Plaintiff's claim fails because he can satisfy neither the adverse action nor the causation elements.

The Sixth Circuit has long held that prisoners possess no right to be confined in any particular prison. *See, e.g., Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986); *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013). Recognizing that prisoners "are expected to endure more than the average citizen," the Sixth Circuit has concluded that the mere transfer from one correctional facility to another is not an adverse action sufficient to maintain a retaliation claim. *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005). This conclusion is intended to prevent the trivialization of the protections afforded by the First Amendment and, furthermore, to prevent federal courts from micro-managing correctional facilities, a task which courts are neither authorized nor competent to undertake. *Id.* at 701; *Bell v. Wolfish*, 468 U.S. 520, 546-47 (1979) (prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security").

On the other hand, if the transfer of a prisoner to another facility causes the prisoner to experience "foreseeable, negative consequences," such as an impairment of the prisoner's ability to access the courts, the transfer will be deemed sufficiently adverse to satisfy the adverse action element of a retaliation claim. *See, e.g., Jones v. Caruso*, 421 Fed. Appx. 550, 553 (6th Cir., Apr. 28, 2011). Plaintiff has failed to present evidence from which a reasonable person could conclude that he experienced "foreseeable, negative consequences" as a result of the transfer in question.

With respect to the causation element, Plaintiff has again failed to allege or present evidence regarding the date(s) on which any of the relevant events occurred. By failing to allege or establish the date(s) on which his allegedly protected conduct occurred and the date(s) on which the allegedly retaliatory conduct occurred, Plaintiff has failed to allege or demonstrate a chronology of events from which retaliation can plausibly be inferred. Accordingly, the undersigned recommends that Defendant Grahn's motion for summary judgment be granted as to this claim.

**II.        Eighth Amendment**

Plaintiff asserts two claims that Defendant Grahn violated his Eighth Amendment rights. First, Plaintiff claims that Grahn's decision to delay prescribing him anti-seizure medication violates the Eighth Amendment. (ECF No. 1 at PageID.6-7). Second, Plaintiff claims that Grahn, on an unspecified date, cancelled Plaintiff's permission to eat in his cell, forcing him to "walk to the chow hall in his debilitated state." (ECF No. 1 at PageID.11).

A.        Denial of Anti-Seizure Medication

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A

"serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that Plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, Defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis

-9-

of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

Defendant Grahn has submitted copies of the relevant portions of Plaintiff's medical records. (ECF No. 18-1 at PageID.160-247; ECF No. 31 at PageID.465-66). This evidence reveals the following. On September 6, 2016, Plaintiff was examined by Registered Nurse Nicole Grekowicz. (ECF No. 18-1 at PageID.161). The results of a physical examination were unremarkable and Plaintiff reported that he "does not have current medical, dental or mental health complaint(s)/concern(s)." (ECF No. 18-1 at PageID.161).

On September 8, 2016, Plaintiff was examined by Defendant Grahn. (ECF No. 18-1 at PageID.163-65). An examination of Plaintiff's feet revealed that his MTP joints were "mildly erythemic and tender to touch" for which Plaintiff was given an accommodation for "deep toe box" shoes. (ECF No. 18-1 at PageID.162, 164). However, Plaintiff exhibited no sensory impairment, no motor weakness, and his balance and gait were both "intact." (ECF No. 18-1 at PageID.164).

On December 7, 2016, Plaintiff was examined by Registered Nurse Stacy Rectenwal following an incident in which Plaintiff was "observed lying on the floor" exhibiting "periodic involuntary body movements." (ECF No. 18-1 at PageID.170-72). A physical examination revealed a "small bump" on Plaintiff's head, but was otherwise unremarkable. (ECF No. 18-1 at PageID.170-72). Rectenwal contacted Defendant Grahn who instructed Rectenwal to provide Plaintiff with Tylenol and instruct him "to notify CO [Corrections Officer] or have roommate notify CO & HC [Health Care}so that seizures can be monitored." (ECF No. 16-3 at PageID.105; ECF No. 18-1 at PageID.172). Plaintiff verbalized his understanding of these instructions and exited health care with a "slow [and] steady gait." (ECF No. 18-1 at PageID.172). Later that same day, Plaintiff

was examined by Dr. Suzanne Howard. (ECF No. 18-1 at PageID.173-74). The results of an examination were unremarkable. (ECF No. 18-1 at PageID.173-74). Plaintiff was instructed that if his condition did not improve within two days to "return to healthcare for re-evaluation." (ECF No. 18-1 at PageID.173-74).

On December 11, 2016, Plaintiff submitted a health care request alleging that he was "constantly having grand mal seizures." (ECF No. 18-1 at PageID.176). Plaintiff requested to be examined by a doctor and to also be provided with "medication." (ECF No. 18-1 at PageID.176). On December 13, 2016, Plaintiff was examined by Defendant Grahn. (ECF No. 16-3 at PageID.105; ECF No. 18-1 at PageID.179-80). Grahn noted that while Plaintiff alleged that he "has been having seizures in his [cell]," Plaintiff failed to report any of these seizures as previously instructed. (ECF No. 18-1 at PageID.179). Plaintiff reported that he was previously prescribed anti-seizure medication, but discontinued taking such in 2009. (ECF No. 18-1 at PageID.179). Defendant Grahn noted that Plaintiff's December 7, 2016 seizure was Plaintiff's "[f]irst documented seizure since 2009." (ECF No. 16-3 at PageID.105; ECF No. 18-1 at PageID.179). The results of a physical examination were unremarkable. (ECF No. 18-1 at PageID.179-80). Defendant Grahn again instructed Plaintiff to "contact healthcare with seizure activity so it can be documented." (ECF No. 16-3 at PageID.105; ECF No. 18-1 at PageID.180). Grahn concluded that "[i]f documentation supported frequent seizures, [he] would consider starting Dilantin." (ECF No. 16-3 at PageID.105; ECF No. 18-1 at PageID.180).

Treatment notes dated December 14, 2016, indicate that late the previous evening, Plaintiff experienced a second "witnessed seizure." (ECF No. 18-1 at PageID.182-84). Plaintiff reported that "he hasn't had any seizures in years and now he has had 3 this week." (ECF No. 18-1

at PageID.182-84).  Following this particular seizure Plaintiff was examined by Dr. Howard and Registered Nurse Nicole Doolittle.  (ECF No. 18-1 at PageID.182-84).  Treatment notes dated December 20, 2106, indicate that earlier that morning, Plaintiff suffered another witnessed seizure. (ECF No. 18-1 at PageID.186-92).  The nurse who initially examined Plaintiff reported this to Defendant Grahn who directed that Plaintiff be prescribed Dilantin.  (ECF No. 16-3 at PageID.105; ECF No. 18-1 at PageID.186-92).

Plaintiff alleges that on December 7, 2016, Defendant Grahn denied his request for anti-seizure medication thereby violating his Eighth Amendment rights.  As discussed above, Defendant Grahn did prescribe anti-seizure medication to Plaintiff on December 20, 2016.  Plaintiff's claim fails because Defendant Grahn has submitted evidence that his decision to briefly delay prescribing anti-seizure medication to Plaintiff was a reasonable exercise of his medical judgment.

As discussed above, the evidence reveals that Grahn did not refuse to treat Plaintiff, but instead made a decision to wait to prescribe anti-seizure to Plaintiff until it was established that Plaintiff was suffering recurrent seizures rather than simply a single, isolated seizure.  This is considered the appropriate course of action by the American Academy of Neurology.  (ECF No. 16-4 at PageID.108-09).  As Defendant Grahn's decision to briefly delay prescribing anti-seizure medication to Plaintiff is considered acceptable medical practice, Plaintiff's claim is based on nothing more than his disagreement with Defendant's exercise of his medical judgment.  Such is insufficient to maintain a denial of medical treatment claim.  Accordingly, the undersigned recommends that Defendant Grahn is entitled to summary judgment as to this claim.

B.     Cancellation of Meals in Cell

As noted above, on December 20, 2016, Defendant Grahn prescribed Plaintiff with anti-seizure medication. Contemporaneous with this decision, Grahn also provided Plaintiff with an accommodation permitting Plaintiff to eat his meals in his cell. (ECF No. 18-1 at PageID.187-88, 209, 217). This accommodation expired on December 31, 2016, at Defendant Grahn's direction. (ECF No. 18-1 at PageID.209, 217). Plaintiff argues that Defendant Grahn violated his Eighth Amendment rights by cancelling his meals-in-cell accommodation.

On January 17, 2017, Defendant Grahn renewed Plaintiff's meals-in-cell accommodation effective January 17, 2017, through January 31, 2017. (ECF No. 18-1 at PageID.231). Defendant Grahn last treated Plaintiff on February 8, 2017, the same day Plaintiff was transferred to another correctional facility. (ECF No. 16-3 at PageID.104-07). Thus, Plaintiff's claim, properly understood, is that Defandant Grahn failed to provide him with a meals-in-cell accommodation between January 1, 2017, and January 16, 2017, and again between February 1, 2017, and February 8, 2017.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The analysis by which Defendant Grahn's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, Plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

With respect to the objective prong of the analysis, contemporary standards of decency determine whether conditions of confinement are cruel and unusual.  *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).  Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities."  *Hadix*, 367 F.3d at 525 (quoting *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)).   If the objective test is met, the Court must then determine whether Defendant acted with a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834.  In other words, was Defendant deliberately indifferent to Plaintiff's health or safety.  *Ibid.*  However, the Eighth Amendment is not implicated where prison officials simply acted with negligence.  *See Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).  In sum, to establish that Defendants acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'"  *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer*, 511 U.S. at 829, 847).

Plaintiff's meals-in-cell accommodation was initially cancelled on December 31, 2016.  On January 4, 2017, Plaintiff requested that this accommodation be renewed.  (ECF No. 18-1 at PageID.216).  Defendant Grahn denied Plaintiff's request on the ground that it was "not medically indicated at this time."  (ECF No. 18-1 at PageID.219).

Treatment notes dated December 20, 2016, indicate that Plaintiff was able to ambulate "with a steady gait."  (ECF No. 18-1 at PageID.188).  Treatment notes dated December 22, 2016, indicate that Plaintiff's gait was within normal limits.  (ECF No. 18-1 at PageID.195).  Treatment notes dated December 28, 2016, indicate that Plaintiff's "balance and gait" were "intact."  (ECF No.

18-1 at PageID.210-11). Treatment notes dated January 6, 2017, indicate that Plaintiff's gait was within normal limits. (ECF No. 18-1 at PageID.224). Treatment notes dated January 10, 2017, indicate that Plaintiff's "balance and gait" were "intact." (ECF No. 18-1 at PageID.227). Treatment notes dated January 17, 2017, likewise indicate that Plaintiff's "balance and gait" were "intact." (ECF No. 18-1 at PageID.234).

Thus, with respect to the period January 1, 2017, through January 16, 2017, the evidence fails to support Plaintiff's contention that requiring him to walk to the chow hall posed a substantial risk of serious harm or deprived Plaintiff of the "minimal civilized measure of life's necessities." As for the period February 1, 2017, through February 8, 2017, the result is the same. Treatment notes dated February 1, 2017, indicate that Plaintiff's "balance and gait" were "intact." (ECF No. 18-1 at PageID.238-41). The results of a physical examination conducted on February 8, 2017, failed to reveal findings suggesting that Plaintiff was incapable of walking to the chow hall. (ECF NO. 18-1 at PageID.245-47). Accordingly, the undersigned recommends that Defendant Grahn is entitled to summary judgment as to this claim.

**III.      Corizon**

Corizon is not vicariously liable for the actions of its employees and, therefore, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). To impose liability against Corizon, Plaintiff must demonstrate that he suffered a violation of his federal rights "because of" a Corizon policy or custom. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Plaintiff can demonstrate the existence of such a policy or custom in one of several ways: (1) prove the existence of an illegal official policy; (2) establish that an official

with final decision making authority ratified illegal actions; (3) demonstrate that there existed a policy of inadequate training or supervision; or (4) establish that there existed a custom of tolerance or acquiescence of federal rights violations. *Ibid.* Plaintiff has failed to present evidence that would satisfy any of these requirements. Accordingly, the undersigned recommends that Corizon is entitled to summary judgment.

**IV.     State Claims**

In addition to his various federal law claims, Plaintiff also asserts state law claims for "negligence" and "malpractice." Federal law provides that the Court "may decline to exercise supplemental jurisdiction" over related state law claims if such claims "substantially predominate[] over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(2). Indeed, "if the federal claims are dismissed before trial. . .the state claims should be dismissed as well." *Taylor v. First of America Bank - Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also*, *Bah v. Attorney General of the State of Tennessee*, 610 Fed. Appx. 547, 555 (6th Cir., May 8, 2015) (same). Accordingly, the undersigned recommends that the Court decline to exercise jurisdiction over Plaintiff's remaining state law claims against Defendants Grahn and Corizon and instead dismiss such without prejudice so that Plaintiff may pursue such in the appropriate state forum.

**CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendants Corizon, Inc. and Corey Grahn' Motion for Summary Judgment</u>, (ECF No. 16), be **granted**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated: January 7, 2019    /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge