UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRODERICK HODGE #352426,

                Plaintiff,                                Hon. Janet T. Neff

v.                                                Case No. 1:18-cv-359

COREY GRAHN, et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

The Court has before it Plaintiff's Motion for Summary Judgment (ECF No. 66) and Defendant Nicholson's Motion for Summary Judgment.  (ECF No. 75.)  Plaintiff's remaining claim in this case arising under 42 U.S.C. § 1983 is that on June 4, 2017, after Plaintiff had collapsed to the floor with back pain, Defendant Nicholson violated Plaintiff's Eighth Amendment rights by picking Plaintiff up from the floor by his arms and throwing him into a wheelchair. Plaintiff alleges that Nicholson's actions caused further injury to Plaintiff's back, necessitating surgery to place a "Caliber L-Fusion" cage in Plaintiff's back.  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **GRANTED** and Plaintiff's motion be **DENIED**.

## Background

Plaintiff is a state prisoner incarcerated with the Michigan Department of Corrections (MDOC).  The events giving rise to the claim at issue occurred at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Michigan.

As of June 4, 2017, Plaintiff had a history of back injuries and pain, for which he had received treatment and a recommendation for surgery.   On December 20, 2016, as Plaintiff was walking to school, he began to feel dizzy and faint at the top of the stairs.  (ECF No. 1 at PageID.7.)  Plaintiff had a seizure and fell down the stairs, seriously injuring his back, neck, and head.  (*Id.*)  Plaintiff suffered ongoing pain from his injuries.  (*Id.* at PageID.8.)

On April 10, 2017, Plaintiff was given a medical accommodation to use a cane due to his back issues.  (ECF No. 76-2 at PageID.733.)  An April 20, 2017 treatment note reported that, since the December 20, 2016 incident, Plaintiff continued to complain of low back pain and consistently "ambulat[ed] slowly while bent over."   A lumbar CT myelogram "revealed severe central canal stenosis, neural foraminal stenosis, and facet arthropathy as well as degenerative changes in the spinal column."  (*Id.* at PageID.743.)   An appointment with a neurosurgeon was requested, and Plaintiff was given an accommodation to use a wheelchair for traveling distances. (*Id.* at PageID.740–41.)   On April 27, 2017, Health Care saw Plaintiff for blood in his urine. Plaintiff was informed that his neurosurgical consultation had been approved and scheduled.  (*Id.* at PageID.745.)

On May 1, 2017, Plaintiff was examined at a hospital in Lansing and was advised that he needed to have back surgery.   The doctor informed Plaintiff that surgery presented risks of permanent paralysis and death.   Plaintiff stated that he was tired of experiencing pain daily.  (*Id.* at PageID.747.)   On May 10, 2017, Plaintiff sent a kite to Health Care stating that he was scheduled for surgery, was in "unbearable pain" daily, and the pain medicine he had been prescribed was not working.   Plaintiff was still waiting for his neurological consult.  (*Id.* at PageID.748–49.)   On May 27, 2017, Plaintiff sent another kite to Health Care about missing an appointment because his wheelchair "pusher" was in the shower.   Plaintiff noted that he would

never miss an appointment because he was in pain and that his surgery was still pending.   (*Id.* at

PageID.752.)

On June 4, 2017, while walking in his housing unit, Plaintiff's right leg gave out and he

fell to his knees in pain and then to the ground on his stomach.   (ECF No. 76-2 at PageID.753.)

Health Care was informed of Plaintiff's situation, and Nurse William Thrush and a female nurse

responded to Plaintiff's unit.   (ECF No. 1 at PageID.12; ECF No. 76-2 at PageID.753.)

Defendant Nicholson also went to check on Plaintiff.   (ECF No. 1 at PageID.12.)   The nurses

assessed Plaintiff in the unit and determined that he could assist with being moved from the floor

to a wheelchair.   (ECF No. 76-2 at PageID.753.)[1]   Plaintiff claims that, at about this point,

Nicholson, who had seen Plaintiff walk with a cane at MTU many times before, said, "I know this

guy is faking it.   There is nothing wrong with him."   (ECF No. 67-1 at PageID.635.)   Nicholson

then said, "We can do this," and directed Nurse Thrush to help him lift Plaintiff as the female nurse

stepped back.   (ECF No. 1 at PageID.12.)[2]   Nicholson then grabbed Plaintiff's arm and began

---

[1] Plaintiff's medical records would be admissible under Fed. R. Evid. 803(6).   *See Jennings v. Crompton*, No. 1:16-cv-1218, 2017 WL 9480204, at *2 (W.D. Mich. Dec. 1, 2017), *report and recommendation adopted*, 2018 WL 564134 (W.D. Mich. Jan. 26, 2018) (noting that "medical records routinely qualify for the business records exception to the rule against hearsay," and there was no indication that such records could not be submitted in a properly admissible form); *Gulett v. Haines*, 229 F. Supp. 2d 806, 810 n.7 (S.D. Ohio 2002).   Moreover, Plaintiff has not objected to the authenticity of his medical records.   "If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived."   *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994).

[2] The Court may treat Plaintiff's allegations in his complaint as judicial admissions.   "Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them.   They may not be controverted at trial or on appeal."   *Keller v. United States*, 58 F.3d 1194, 199 n.8 (7th Cir. 1995).   A court has discretion to consider a statement a judicial admission and will only do so if the statement is "deliberate, clear and unambiguous."   *United States v. Burns*, 109 F. App'x 58 (6th Cir. 2004).   Here, Plaintiff's allegations regarding the June 4, 2017 incident are deliberate, clear, and unambiguous, and thus should be treated as binding on Plaintiff.

jerking and pulling on it very hard and directed Nurse Thrush to do the same.  (*Id.*)  Because

Plaintiff "weighed approximately 250 pounds . . . [it] was no easy task to pick Plaintiff up off the

floor."  (*Id.*)  Plaintiff claims that Nicholson ignored his multiple requests to stop jerking and

pulling on his arm because Plaintiff was in pain.  (ECF No. 67-1 at PageID.635–36.)  After being

placed in the wheelchair, Plaintiff was taken to Health Care, where he was examined.

Plaintiff alleges that Nicholson's actions further injured Plaintiff's back and required

Plaintiff to have surgery in late 2017.

## Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and

the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Material facts

are facts which are defined by substantive law and are necessary to apply the law.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if a reasonable jury could

return judgment for the non-moving party.  *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but

may grant summary judgment when "the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party."  *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th

Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot

sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher

hurdle."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).  Where the moving party has the

burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could

find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.

1986).  The Sixth Circuit has emphasized that the party with the burden of proof "must show the

record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## Discussion

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976).   Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions.  *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).   In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering."  *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

Initially, the Court notes that the parties treat Plaintiff's claim as one for denial of medical care.  (ECF No. 67 at PageID.613 (Plaintiff's brief arguing that "Plaintiff has set forth a claim of deliberate indifference to his serious medical need by Defendant Nicholason [sic]"); ECF No. 76 at PageID.721 (Defendant's brief noting that "[t]he denial of medical treatment satisfies the deliberate indifference standard only if significant harm or injury is shown").)  But Defendant Nicholson was not a medical provider, did not exercise medical judgment, and was not purporting to provide Plaintiff medical care by moving Plaintiff from the ground to the wheelchair. Moreover, Plaintiff does not claim that Defendant Nicholson denied him medical care in any way. In fact, under Plaintiff's version of events and according to Plaintiff's medical records, Defendant

Nicholson was attempting to move Plaintiff from the floor to a wheelchair so that Plaintiff could be taken to Health Care and examined. *See LaPine v. Rewerts*, No. 1:18-cv-1447, 2019 WL 1219142, at *6 (W.D. Mich. Mar. 15, 2019) ("Plaintiff's allegations also do not support that the transportation officers disregarded Plaintiff's wrist injury. They took Plaintiff to a hospital where he was examined by medical professionals."). Plaintiff was not denied medical care by Defendant Nicholson or anyone else.

Rather, the more appropriate framework to analyze Plaintiff's claim is a use-of-force analysis because, at bottom, Plaintiff's complaint is that Defendant Nicholson either should not have attempted to move Plaintiff at all or that he used excessive force in doing so. *See*, *e.g., Green v. Ferdarko*, No. 15-45, 2017 WL 9285187, at *8 (W.D. Pa. Dec. 12, 2017), *report and recommendation adopted*, 2018 WL 2009087 (W.D. Pa. Apr. 30, 2018) (applying excessive force analysis to the prisoner's claim that he was dragged from a transport van and "slammed" into a waiting wheelchair). The legality of use of force typically arises when prison officials use force to maintain order and discipline, but the same analysis is useful here. The Supreme Court has held that "whenever guards use force to keep order," the standards set forth in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7. In determining whether the use of force is wanton and unnecessary, a court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any effort made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321). In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court affirmed that the "core judicial inquiry" is "not whether a

6

certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 37 (quoting *Hudson*, 503 U.S. at 7). The Court noted that the degree of injury is still relevant to the inquiry, as it may shed some light on the amount of force used, but "[a]n inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 38 (quoting *Hudson*, 503 U.S. at 9).

I.      **Plaintiff's Motion**

Plaintiff argues that he is entitled to summary judgment because Nicholson admitted in his discovery responses that he did not recall the incident or what assistance, if any, he provided to Plaintiff on June 4, 2017. (*See* ECF No. 67-1 at PageID.626, 631.) Plaintiff argues that Nicholson's "don't recall" responses are insufficient to rebut Plaintiff's affidavit and cannot defeat Plaintiff's motion for summary judgment. (ECF No. 67 at PageID.614.) Plaintiff further argues that the Court should reject Nicholson's affidavit because it contradicts his prior sworn admissions and interrogatory answers. (ECF No. 83 at PageID.836–37.) While it is true that Nicholson stated he did not recall the incident, he denied several of Plaintiff's specific allegations, including that he made the comment "I know this guy is faking it. There is nothing wrong with him." (ECF No. 67-1 at PageID.626.) Nicholson also denied jerking Plaintiff's arm to lift him off the floor and knowledge of Plaintiff's back condition. (*Id.* at PageID.627.) These statements are consistent with Nicholson's denials in his affidavit. Moreover, Nicholson's responses do not suggest that he concedes the truth of Plaintiff's allegations. "If one is alleged to have said something but does not recall saying it, this suggests that the statement was never made, particularly when the statement would have been out of the ordinary." *Gold v. Am. Med. Alert*

*Corp.*, No. 14 Civ. 5485, 2017 WL 663551, at *4 (S.D.N.Y. Feb. 16, 2017).   Thus, these factual issues remain in contention.

Apart from Nicholson's denials, the record contains other evidence that contradicts Plaintiff's allegations.   For example, Nurse Thrush's nurse protocol report documents that Plaintiff "was lifted from the floor and placed in wheelchair without incident."  (PageID.76-2 at PageID.753.)   And, nothing in the examination notes from that day indicates that Plaintiff reported being injured by Nicholson, but in a follow-up examination the next day, Plaintiff reported that officers (not a nurse) lifted him by his arms and threw him into the wheelchair.   (*Id.* at 759.)   A reasonable jury crediting such evidence could choose to disbelieve Plaintiff's allegations.   Thus, Plaintiff has not shown that his "evidence is so powerful that no reasonable jury would be free to disbelieve it."   *Arnett*, 281 F.3d at 561.   Finally, for the reasons set forth below, Nicholson is entitled to summary judgment even if Plaintiff's allegations are accepted as true.

## II.     Defendant's Motion

Although the parties proceed under the incorrect analytical framework for Plaintiff's claim, the Court will apply the proper excessive force analysis.   *See Spring-Weber v. City of Chicago*, No. 16 C 8097, 2018 WL 4616357, at *12 (N.D. Ill. Sept. 26, 2018) (analyzing the claim as a seizure under the Fourth Amendment even though "[t]he parties offer[ed] the incorrect analytical framework").   Thus, the Court applies the factors set forth in *Whitley*.

The need for application of some force was apparent.   Plaintiff was lying on the ground in pain and needed to be moved to the wheelchair so that he could be taken to Health Care.   Lifting Plaintiff by his arms to get him into the wheelchair was a reasonable method of accomplishing the task.   As Plaintiff concedes, because he weighed 250 pounds, lifting him "was no easy task" and

8

obviously would have required more than minimal force to get him into the wheelchair.    In other words, given Plaintiff's weight and inability to provide much assistance, a soft landing in the wheelchair was an unlikely outcome.    The circumstances also show that Defendant Nicholson used force "in a good-faith effort to [get Plaintiff into the wheelchair so that he could obtain medical care], [not] maliciously and sadistically to cause harm."   *Hudson*, 503 U.S. at 6–7. Because Nicholson was not a medical professional, he was entitled to rely on the nurses' assessment that Plaintiff could safely be moved to a wheelchair.   *See McGaw v. Sevier Cty.*, 715 F. App'x 495, 498–99 (6th Cir. 2017) ("Where, as here, an officer responds to a substantial risk of serious harm by asking for and following the advice of a professional the officer believes to be capable of assessing and addressing the risk, then the officer commits no act of deliberate indifference in adhering to that advice."); *Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009) (concluding that a jail officer could rely on emergency medical technicians to determine the prisoner's medical needs).

The fact that Defendant Nicholson allegedly laughed and made a comment about Plaintiff faking his injury is not enough to show that Defendant Nicholson intended to inflict pain on Plaintiff.   *See Newbon v. Milwaukee Police Dep't*, 09-C-477, 2011 WL 3844095, *4 (E.D. Wis. Aug. 30, 2011) (concluding that the plaintiff's subjective perception of an officer's intent based on the officer's smirk after the officer dropped the plaintiff's leg while assisting him into a transport van was insufficient to show that the act was wanton or intentional).   There is also no evidence that Defendant Nicholson was aware of the extent of Plaintiff's injury or medical condition, such that he would have known that using too much force could have caused Plaintiff further injury.   Plaintiff's allegation that Defendant Nicholson saw Plaintiff using a cane to walk on several occasions does not equate to proof of knowledge of Plaintiff's back condition.

Moreover, Defendant Nicholson's comment to Nurse Thrush that "We can do this" demonstrates Defendant Nicholson's intent to get Plaintiff into the wheelchair, not to inflict pain on Plaintiff.

As for injury, *Wilkins* teaches that "[t]he extent of injury may also provide some indication of the amount of force applied."  559 U.S. at 37.  Here, the only injury Plaintiff alleges is that Defendant Nicholson's actions exacerbated Plaintiff's preexisting back condition and necessitated surgery.  But the evidence of record (including Plaintiff's medical records) shows that at the time of the June 4, 2017 incident, Plaintiff's back was already in poor shape and surgery was a foregone conclusion.  Moreover, Plaintiff is not qualified to offer a medical opinion as to whether Defendant Nicholson's conduct made Plaintiff's back condition worse.  Regardless, even if Defendant Nicholson's actions exacerbated Plaintiff's condition, Plaintiff must still show that Defendant Nicholson acted "maliciously and sadistically to cause harm,"  *Hudson*, 503 U.S. at 7, and he has failed to do so.

The instant case is similar to *Green*, *supra*, in which the plaintiff alleged that the defendant used excessive force when lifting the plaintiff from the back of a van into a wheelchair by "slamming" him into the wheelchair.  Applying the factors in *Whitley*, the court first observed that it was "clear that some force was necessary to transfer Plaintiff to a waiting wheelchair." 2017 WL 9285187, at *8.  As to the second and third factors, the court noted that the Plaintiff's medical records did not indicate that the plaintiff suffered any discernable injury.  Finally, the court observed that the plaintiff's refusal or inability to transfer from the van to the wheelchair "necessitated staff's physical contact," and there was "no evidence that the quantum of force used was of the malevolent sort sufficient to support an Eighth Amendment claim."  *Id.*; *see also Banks v. Winn Corr. Ctr.*, No. 09-CV-1139, 2009 WL 5440749, at *3 (W.D. La. Dec. 21, 2009) (finding the plaintiff's claim that the defendant used excessive force when he "'snatched' [the plaintiff] up

off of the floor and 'threw him' into the wheelchair" frivolous because "some sort of force was necessary to lift Plaintiff up off the floor and into the wheelchair without any assistance from the Plaintiff himself"); *Broadway v. Lynn*, No. Civ. S-09-0192, 2009 WL 10658353, at *2 (E.D. Cal. Aug. 28, 2009), *aff'd* 523 F. App'x 465 (9th Cir. 2013) (the plaintiff's allegation that the defendants lifted the plaintiff from a van and "slammed" him into a wheelchair failed to state a claim where the plaintiff did not make "a colorable showing that what occurred was a malicious and sadistic use of force intended to cause harm").

Accordingly, the undersigned recommends that Plaintiff cannot establish an Eighth Amendment violation, and Defendant Nicholson is entitled to summary judgment.

Defendant Nicholson also argues that he is entitled to qualified immunity.  The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999).  An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct.  *Id.* at 241.  If the court can

conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted.   The court may consider either prong of the inquiry without regard to sequence.   *Id.* at 236.   Because Plaintiff has failed to establish that a constitutional violation occurred, I further recommend that Defendant Nicholson is entitled to qualified immunity.

## Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendant's Motion for Summary Judgment (ECF No. 75), **deny** Plaintiff's Motion for Summary Judgment (ECF No. 66), and dismiss Plaintiff's complaint with prejudice.

I further recommend that an appeal of this matter would not be taken in good faith.   *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: February 21, 2020                              /s/ Sally J. Berens
                                                     SALLY J. BERENS
                                                     U.S. Magistrate Judge